**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JEFFREY KARBOSKI,**

    **Plaintiff,**

vs.                                                            Case No: 8:12-CV-2033-T-33EAJ

**CAROLYN W. COLVIN,**[1]
**Commissioner of Social Security,**

    **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, Title 42, United States Code, Section 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Act.[2]

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends reversal of the Commissioner's decision and remand for further administrative proceedings.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2006). Substantial evidence is "such relevant

---

[1] The current acting Commissioner of Social Security, Carolyn W. Colvin, is substituted for Michael J. Astrue, former Commissioner of Social Security. See Fed. R. Civ. P. 25(d).

[2] The district court referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

evidence as a reasonable person might accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citation omitted).

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I. Background

On December 9, 2008, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of May 17, 2007 in both applications. (T 24, 129, 136) Plaintiff's applications were denied initially and upon reconsideration. (T 24) A hearing was held on August 31, 2010. (T 24, 40) Thirty-three years old at the time of the hearing, Plaintiff has a high school education and past work experience as a data entry clerk, telemarketer, and sander. (T 31, 184, 203)

On October 18, 2010, the ALJ denied Plaintiff's applications. (T 32) The ALJ determined that Plaintiff's severe impairments included chronic back pain/degenerative disc disease, status post-knee arthroscopy, and obesity. However, the ALJ further found that these impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T 27) The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work subject to the following limitations: lift twenty (20) pounds occasionally and ten (10) pounds

frequently; sit for six hours in an eight-hour workday; and stand or walk for six hours in an eight-hour workday. (T 27-28)   Plaintiff cannot climb ladders, ropes, or scaffolds,[3] and he cannot crawl. (T 28) But Plaintiff can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, and crouch. (Id.)

The ALJ determined that Plaintiff can perform his past relevant work as a data entry clerk, telemarketer, and sander. (T 31)  Consequently, the ALJ concluded that Plaintiff was not disabled and denied Plaintiff's claims. (T 31-32)  On July 11, 2012, the Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. (T 1-3)

The medical evidence and other evidence of record has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

Raising four issues on appeal, Plaintiff contends that the ALJ failed to: (1) properly weigh the opinions of several physicians; (2) appropriately evaluate Plaintiff's credibility; (3) consider the effect of Plaintiff's obesity on his RFC assessment and other medical conditions; and (4) pose a hypothetical to the vocational expert ("VE") that included all of Plaintiff's limitations.  Because issue three can be decided apart from the other three issues, it is addressed first.

**A.**     Plaintiff claims that the ALJ did not analyze the impact of Plaintiff's obesity on his ability to perform work related activities and his other medical conditions in accordance with Social Security Ruling ("SSR") 02-1p.

---

[3] On first reference in the ALJ's opinion, the RFC states that Plaintiff "*can* climb ladders, ropes, and scaffolds." (T 28 (emphasis added))  However, it is evident that this is a typographical error, as the ALJ further explains that Plaintiff's back pain "prevent[s] him from crawling, or climbing ladders[,] ropes, or scaffolds." (T 30)

SSR 02-1p explains that "[o]besity is a complex, chronic disease characterized by excessive accumulation of body fat. Obesity is generally the result of a combination of factors (e.g., genetic, environmental, and behavioral)." SSR 02-1p, 2000 WL 628049 (Sept. 12, 2002). Further, "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." Id. The ALJ should "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." Id.

Plaintiff's weight ranged from 347 pounds to 361 pounds during the relevant time period (T 43, 182, 271, 273, 275, 302, 385), resulting in a Body Mass Index ("BMI") ranging from 39.1 to 40.7. A person with a BMI greater than 30 is considered obese, and a BMI equal to or greater than 40 falls into the category of "extreme obesity," which means the individual is at greatest risk for developing obesity-related complications.[4] SSR 02-1p.

Even if SSR 02-1p were binding on this Court, which it is not,[5] the ALJ found Plaintiff's obesity to be a severe impairment and indicated in his opinion that he considered Plaintiff's impairments in combination. (T 27)[6] The ALJ also explained that the RFC assessment was based on "careful consideration of the entire record," (Id.) which documents Plaintiff's weight and includes notations that Plaintiff needs to lose weight and exercise (T 423, 483).

---

[4] SSR 02-1p explains: "BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2)." Plaintiff's height is 6'7". (T 182, 271, 275 302)

[5] It is well established that agency rulings are not binding in the Eleventh Circuit and do not have the force and effect of law. See Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 662 (11th Cir. 2007) (per curiam) (unpublished).

[6] See generally Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (holding that the ALJ considered a claimant's impairments in combination because the opinion included language that the claimant did not have "an impairment or combination of impairments" that met a listing).

Although the ALJ did not make an express statement about the impact of Plaintiff's obesity, his opinion indicates that he adequately considered Plaintiff's obesity. In any case, Plaintiff does not specifically explain how his obesity impacts his ability to work or point to medical evidence showing an effect on his work-related abilities. Instead, Plaintiff appears to maintain that his BMI alone is evidence that his obesity impacts his functionality. But while BMI levels "describe the extent of obesity," they "do not correlate with any specific degree of functional loss." SSR 02–1p.

For the foregoing reasons, the ALJ did not err in failing to discuss the impact of Plaintiff's obesity on his ability to work or other medical conditions. See generally, Moore v. Astrue, No. 8:10-cv-0643-T-23EAJ, 2011 WL 2562838, at *2 (M.D. Fla. June 10, 2011) (citation omitted). Plaintiff is not entitled to relief on his issue.

**B.** Plaintiff asserts that the ALJ failed to give the proper weight to the opinions of treating physician T. Elaine McLaughlin, M.D. ("Dr. McLaughlin") and consultative examiner Adam DiDio, M.D. ("Dr. DiDio"). Plaintiff also claims that the ALJ gave too much credence to the conclusions of non-examining physician Ronald Kline, M.D. ("Dr. Kline").

In assessing medical evidence in a disability case, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) (citation omitted). However, the opinion of a one-time examiner is "not entitled to great weight." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam) (citation omitted). In contrast, a treating physician's opinion must be given "substantial or considerable weight" unless there is good cause to disregard the opinion. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence

5

supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. Id. at 1179.

Nonetheless, if the ALJ articulates good cause for discrediting the treating and examining physicians' opinions, the ALJ is entitled to rely on a non-examining physician's opinion when it is consistent with the medical record and the treating and examining physicians' underlying clinical findings. Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 742-43 (11th Cir. 2011) (per curiam) (unpublished).[7]  Ultimately, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (citations and internal quotation marks omitted).

After a car accident in February 2001, Plaintiff began experiencing severe low back pain with weakness and numbness in both legs. (T 481) In May 2003, he underwent an L4-5 and L5-S1 hemilaminectomy and microdiscectomy, which relieved his numbness to some degree. (Id.) Dr. McLaughlin first saw Plaintiff in July 2005 for back pain after he heard a popping sound in his back upon bending. (T 288, 290) She noted "very diffuse tenderness" in the spinal area and paravertebral muscles. (T 290) Dr. McLaughlin recommended massage, Vicodin, and Valium, observing that it was unlikely Plaintiff would be able to return to his part-time job at the time. (Id.)

Thereafter, Dr. McLaughlin treated Plaintiff from September 2008 through January 2010 for a variety of complaints, including back pain, sleep issues, anxiety, psoriasis, and gastroesophageal reflux disease. (T 283-90, 371-72, 384-85, 414-23) On May 10, 2008, Plaintiff underwent a CT of the lumbar spine that showed no fractures but revealed a compression deformity of the superior

---

[7] While not binding precedent, unpublished opinions of the Eleventh Circuit Court of Appeals may be cited as persuasive authority. 11th Cir. R. 36-2.

endplate of L1.  (T 291)   Bulging was noted at L3-L4, L4-L5, and L5-S1.  (T 292)

On September 8, 2008, Dr. McLaughlin treated Plaintiff for back pain and other ailments, noting that Plaintiff needed a referral for disc disease and that he suffered from lumbar radioculopathy.[8]  (T 285)   Subsequently in a "Progress Report" dated October 15, 2008, Dr. McLaughlin stated that Plaintiff had severe low back pain due to spinal stenosis, rendering him "totally and permanently disabled." (T 283)

On March 5, 2009, Dr. McLaughlin completed a "Multiple Impairment Questionnaire" for Plaintiff, observing that he had recently "reinjured" himself, causing a "new herniated disc" and constant pain. (T 363-64)  She noted that any activity – sitting, walking, driving – triggered the pain. (T 365)  Dr. McLaughlin concluded that Plaintiff could sit for a total of four (4) hours during an eight-hour day; he could also stand and/or walk for four (4) hours out of an eight-hour day; he could not sit for more than thirty (30) minutes at a time; and he could lift no more than five (5) pounds occasionally.  (T 365-66)  She found that he would have to miss work "much more" than three times a month and concluded that he was unable to perform a full-time job. (T 368-69)  Dr. McLaughlin noted that her opinion was based on information from Plaintiff as well as abnormal x-rays and MRIs. (T 363, 368)

In June 2009, Dr. Kline reviewed Plaintiff's medical records and compiled a Physical Residual Functional Capacity Assessment. (T 392-99)  Dr. Kline noted that an MRI showed disc bulge and degenerative disc disease, but no stenosis or neurocompression. (T 393)  He stated that

---

[8] "Radiculopathy refers to nerve irritation caused by damage to the disc between the vertebrae." Stuart v. Astrue, No. 10–2385–WQH (WVG), 2011 WL 5444074, at *2 n.6 (S.D. Cal. Aug. 3, 2011) (citation omitted).  "Lumbar radiculopathy" arises from irritation in the lower back caused by degenerative disc disease, resulting in shooting pain that emanates into the lower extremities. Id.

Plaintiff exhibited paraspinal tenderness upon examination. While concluding that Plaintiff's "allegations may be credible," Dr. Kline determined that Plaintiff was capable of performing light work. (T 397-98) He stated that Plaintiff could sit for six (6) hours in an eight-hour workday; stand and/or walk for six (6) hours in an eight-hour workday; and lift twenty (20) pounds occasionally and ten (10) pounds frequently. (T 393) However, Plaintiff could never balance or crawl. (T 394) Also, he should be limited to occasional climbing of ramps and stairs and occasional balancing, stooping, kneeling, and crouching. (Id.)

In August 2010, Plaintiff was referred to Dr. DiDio, a neurologist, for a consultative examination due to chronic lower back pain. (T 481) Dr. DiDio stated that Plaintiff described his pain as a "sharp, constant, nagging sensation" as if someone was trying to "chisel" out of his spine. (Id.) Dr. DiDio reported that the pain was worse on the left side, but Plaintiff did not have any "radicular pain down the legs." (Id.) Upon examination, Plaintiff showed full range of motion in the neck, with pain and mild palpitation in the lumbar spine area that was greater on the left side than the right. (T 482) Dr. DiDio found that Plaintiff exhibited normal tone, bulk, and power in a motor examination but showed mild weakness in the entire left lower extremity and a decrease in pinprick sensation of the lateral femoral cutaneous nerves on both sides. (Id.) Sensation was otherwise intact and symmetric. (Id.)

In reviewing an August 4, 2010 MRI of the lumbosacral spine, Dr. DiDio observed early disc degeneration at L2-3, mild disc degeneration at L1-2, and advanced disc degeneration at T12/L1. (T 483) He also examined a July 27, 2010 x-ray showing mild anterior wedging from T11-L1 and additional records from Florida Hospital in Orlando, Suncoast Medical Clinic, and All Florida Orthopedics. (Id.) In summarizing his findings, Dr. DiDio opined that Plaintiff's chronic

lower back pain seemed "out of [proportion] to his underlying lumbar spondylosis." (Id.) He prescribed an anti-inflammatory medication, Arthrotec, and physical therapy three times a week for six weeks. (T 483)

In addition, Dr. DiDio compiled a "Spinal Impairment Questionnaire" that listed Plaintiff's diagnosis as "guarded." (T 485) He concluded that Plaintiff could sit for no more than two (2) hours in an eight-hour workday; stand/walk for no more than two (2) hours in an eight-hour workday; would need to get up and move "frequently" throughout the day; could carry up to five (5) pounds frequently and up to ten (10) pounds occasionally; and would miss work more than three times a month. (T 488-90)

In his opinion, the ALJ stated that he gave less weight to the opinions of Dr. McLaughlin and Dr. DiDio, while assigning significant weight to the opinion of Dr. Kline. (T 30)

**1. Dr. McLaughlin's opinion**

The ALJ found that Dr. McLaughlin's description of Plaintiff's limitations conflicted with the medical record, Plaintiff's own testimony, and the ALJ's observations of Plaintiff at the hearing. (Id.) Specifically, the ALJ challenged the physician's conclusion that Plaintiff could not sit for more than thirty (30) minutes at a time because Dr. McLaughlin never made this observation in any of her treatment notes. (Id.) The ALJ stated that he observed Plaintiff sit at the hearing for forty-five (45) minutes "with no obvious signs of distress." (Id.) He also noted that Dr. McLaughlin's finding that Plaintiff could lift no more than five (5) pounds conflicted with Plaintiff's testimony that he could lift ten (10) pounds maximum. (Id.)

Plaintiff contends that the ALJ failed to give sufficient reasons for rejecting Dr. McLaughlin's opinion, noting that he did not cite medical evidence that contradicted Dr.

9

McLaughlin's findings. Plaintiff also asserts that the record does not support the ALJ's observation that he sat through a forty-five (45) minute hearing without difficulty. (T 29, 30)

The ALJ mischaracterized the record when he stated that Plaintiff sat without distress for forty-five (45) minutes at the hearing, thereby undermining Dr. McLaughlin's conclusion that he could sit no longer than thirty (30) minutes at any one time. To the contrary, the record shows that Plaintiff's hearing lasted for only twenty-seven (27) minutes total and that Plaintiff asked for permission to stand about half-way through.[9] (T 40, 53, 61) The Commissioner argues that any error on this point is harmless because the ALJ gave other reasons for discrediting Dr. McLaughlin. (Dkt. 12 at 7 n.5) However, this error also impacted the ALJ's evaluation of Plaintiff's subjective complaints. (T 28-29) It is not harmless error.

Moreover, while Dr. McLaughlin's limitation to lifting no more than five (5) pounds occasionally is more restrictive than Plaintiff's testimony that he can lift up to ten (10) pounds, this is not a sufficient basis for discrediting her opinion. Plaintiff appeared to be referring to the maximum amount of weight he could lift at one time,[10] while Dr. McLaughlin was estimating the amount Plaintiff could lift occasionally throughout an eight-hour workday.

While the ALJ is entitled to discount a treating physician's opinion for good cause, on the present record, the ALJ failed to articulate good cause for assigning little weight to Dr. McLaughlin's opinion. The ALJ's explanation for discounting Dr. McLaughlin's opinion is

---

[9] According to the transcript, the hearing began at 8:33 a.m. and ended at 9:00 a.m.

[10] In testifying at the hearing, Plaintiff appeared to be making a general approximation, stating that the heaviest he could lift was "[p]robably eight to ten pounds – it's a gallon of milk I lift." (T 49)

10

insufficient to support the ALJ's conclusion.[11]  Further evaluation of Dr. McLaughlin's opinions is required on remand.

### 2. Dr. DiDio's opinion

In giving less weight to Dr. DiDio's opinion, the ALJ explained that Dr. DiDio's notes did not contain any of the restrictions that he later set forth in his Spinal Impairment Questionnaire. (T 30)  Additionally, the ALJ noted that Dr. DiDio found Plaintiff can lift up to ten (10) pounds, which conflicts with Dr. McLaughlin's finding that Plaintiff can lift no more than five (5) pounds.

Although Dr. DiDio's opinion is not entitled to "great weight" as a one-time examiner, Crawford, 363 F.3d at 1160, his opinion as a board-certified neurologist provides insight that could impact the ALJ's decision on remand in re-evaluating Dr. McLaughlin's opinions.  In light of that, it is unnecessary to fully review this issue.  The ALJ shall give appropriate consideration to the opinions of Dr. DiDio on remand.

### 3. Dr. Kline's opinion

The ALJ stated that he gave "significant weight" to Dr. Kline's conclusions about Plaintiff's limitations (T 30), and he adopted them as Plaintiff's RFC assessment. (T 27-28, 393-94)

The ALJ is required to articulate good cause for discounting a treating physician's opinion before relying on a non-examining physician's opinion. Flowers, 441 F. App'x at 743.  However,

---

[11] The Commissioner also argues that the ALJ discounted Dr. Laughlin's opinion because Dr. McLaughlin refers to x-rays and MRIs in support of her findings (T363), but the diagnostic images available at the time do not support the physician's contentions. (Dkt. 12 at 8) Nonetheless, the ALJ did not discuss any discrepancies between Dr. McLaughlin's conclusions and diagnostic images in his opinion.  As such, this argument is not persuasive. See generally N.L.R.B. v. Ky. River Cmty. Care, Inc., 532 U.S. 706, 715 n.1 (2001) (citations and internal quotation marks omitted) (explaining that when a court judicially reviews an administrative action, it may not "substitute counsel's post hoc rationale for the reasoning supplied" by the agency itself).

if good cause is established, the ALJ is entitled to credit a non-examining physician's opinion if it is consistent with the medical record and the underlying clinical findings of treating physicians. Id. But as the ALJ failed in this case to articulate good cause for according less weight to Dr. McLaughlin's opinion, his treatment of Dr. Kline's conclusions requires additional development of the record on remand.

C. Plaintiff claims that the ALJ did not appropriately assess the credibility of his subjective complaints because he applied the wrong legal standard in making the determination, relied on his inaccurate recollection of Plaintiff's ability to sit during the hearing, and supplanted medical opinions with his own conclusions.

Subjective complaints are evaluated according to a three-part "pain standard" that is used when a claimant attempts to establish disability through testimony about pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)(per curiam). A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition; or (3) the objectively determined medical condition is of sufficient severity that it would reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam). If the ALJ does not credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicitly and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam). A clearly articulated credibility finding that is substantially supported by the record will not be overturned. Id. at 1562 (citation omitted).

In addition to other criteria, the ALJ may consider a claimant's appearance and demeanor during the hearing in making credibility determinations, as long as the ALJ does not reject objective

medical evidence based on these observations. Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985). An ALJ is not permitted to substitute his or her own judgment for a medical professional's diagnosis. See Marbury v. Sullivan, 957 F.2d 837, 840 (11th Cir. 1992) (per curiam).

At the hearing, Plaintiff described a typical day as driving his stepdaughter to the bus stop, then driving to his parents' residence about three miles away. (T 51, 53) While at his parents' home, Plaintiff passes the time by working on a computer, "walking around," playing board games with his mother, and watching television. (T 51, 54) When Plaintiff returns home in the evening, his wife makes dinner, and they watch television together before going to bed by 9 p.m. (T 51)

Plaintiff testified that he is unable to do any chores around the house, and although he goes shopping, his wife and stepdaughter do all the lifting. (T 54) He cannot walk more than two to three blocks before resting, and he sometimes uses a cane to get around. (T 51, 53) He does not participate in any of his stepdaughter's school activities, belong to any organizations, or attend church because it is too difficult to sit for any length of time. (T 54-55)

Describing his pain as constant, Plaintiff stated that its severity fluctuates, giving him good days and bad days. (T 46-47) On a bad day, he does not get relief from his pain medication and must constantly shift his position. (T 47) Plaintiff takes an anti-inflammatory medication and a pain medication (Vicodin) that relieve the discomfort to a point where Plaintiff "can function somewhat." (Id.) The medication makes him drowsy, and Plaintiff needs to lay down three to four times a day for twenty-minute intervals. (T 48)

In addition to his back pain, Plaintiff testified that he suffers from periodic tingling and numbness in both legs. At the hearing, Plaintiff explained that this leg discomfort is unrelated to his back problems, according to his neurologist. (T 49) He said the numbness and tingling is

13

triggered by sitting for too long, such as driving beyond fifteen (15) or twenty (20) minutes. (T 50)

The ALJ stated that he had no "doubt that the claimant suffers from pain and discomfort" in his back and legs but concluded that Plaintiff's allegations about the intensity and limiting effects of his pain were not fully credible. (T 30) The ALJ found that Plaintiff's description of radiating pain down his legs was inconsistent with the medical record, as Plaintiff denied radiating pain to Dr. DiDio on August 11, 2010. (T 28, 481) The ALJ again noted erroneously that Plaintiff sat through a forty-five (45) minute hearing without discomfort. (T 29, 30) Moreover, the ALJ observed that Plaintiff had performed a number of jobs since his 2003 back surgery and concluded that Plaintiff's back condition had not worsened since that time. (T 29) The ALJ also stated that an MRI of Plaintiff's spine was "not entirely consistent" with Plaintiff's complaints, noting that the imagery showed bulging in places but no significant stenosis. (Id.)

Although Plaintiff complained at times of radiating pain down his legs, he clarified at the hearing that his leg pain, numbness, and tingling were unrelated to his back issues. (T 49)[12] Additionally, the ALJ relied on his mistaken impression that Plaintiff sat for forty-five (45) minutes without moving or showing distress at the hearing. As already explained, this observation is not supported by the record.

As to Plaintiff's job history contradicting the severity of his pain, Plaintiff alleges a disability onset date of May 17, 2007. Although Plaintiff worked since that time,[13] his employment did not

---

[12] Plaintiff was asked, "Do you ever get any type of numbness in your legs caused from your back?" (T 49) Plaintiff replied, "Not caused from my back. The neurologist told me that it was due to a different symptom." (Id.)

[13] Plaintiff testified that worked as a "picture viewer" for MySpace in 2008 where he examined photos that were posted online for inappropriate content. (T 45) At that job, he earned $950, which did not qualify as substantial gainful activity. (T 26, 44)

attain the level of substantial gainful activity.[14] (T 26)  Moreover, the ALJ's conclusion that Plaintiff's back condition had not worsened since his 2003 surgery appears to be based, at least partly, on his own assessment of the objective medical evidence, including the ALJ's finding that Plaintiff's MRIs do not reveal significant back problems. (T. 29)[15]

Dr. McLaughlin opined as early as July 2005 that Plaintiff's back condition was significant enough to preclude work. (T 290) In her October 2008 Progress Report, Dr. McLaughlin stated that Plaintiff suffered from "severe lower back pain due to spinal stenosis" and that he was unable to work for this reason.  (T 283)  She further noted in March 2009 that Plaintiff's prognosis had worsened after he re-injured himself. (T 363)  Plaintiff testified at the hearing that he had thrown his back out while working at the picture viewing job in 2008, which led to his dismissal. (T 45)

Given that the ALJ's credibility determination is partly impacted by his decision to assign less weight to Dr. McLaughlin's opinion, this issue requires further evaluation upon remand due to the problems already identified in weighing the medical evidence.  While the Commissioner ultimately may determine that Plaintiff's complaints should not be fully credited, the reasons given here are insufficient.[16]

---

[14] As explained in the ALJ's opinion:

> Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. Substantial work activity is work activity that involves doing significant physical or mental activities. Gainful work activity is work that is usually done for pay or profit, whether or not a profit is realized.

(T 25 (internal citations and quotation marks omitted))

[15] The opinion states that "[t]he undersigned also finds that the MRI of the claimant's spine is not entirely consistent with the claimant's allegations." (T 29)

[16] Plaintiff also submits that the ALJ used the wrong legal standard in evaluating his credibility because certain language in the opinion suggests that the ALJ compared Plaintiff's complaints to

**D.** Plaintiff also contends that the ALJ's hypothetical to the VE failed to comprise all of his limitations.

In order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question to the VE that includes all of a claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citation omitted). However, the ALJ is required to include only limitations that the ALJ finds supported by the evidence. See Crawford, 363 F.3d at 1161. The "mere existence of [an] impairment[] does not reveal the extent" to which it limits a claimant's ability to work. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) (per curiam) (citation omitted).

The RFC describes the most a claimant can do in a work setting despite limitations resulting from the claimant's impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). It is based on consideration of the relevant medical and other evidence in the record. Id. "The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor." Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (per curium) (unpublished).

Because remand is required on other issues, it is unnecessary to decide this issue. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam).

### III. Conclusion

In recommending remand for further fact-finding on the issued identified above, this Court

---

the RFC, rather than to the medical evidence as required. (Dkt. 11 at 14-15) Plaintiff notes that at least one circuit has criticized this language for indicating a "backwards" approach in that the ALJ completed the RFC assessment before making a credibility determination. Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012). This is not the Eleventh Circuit's position, however. See generally Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation and internal quotation marks omitted) (stating that an ALJ is not required to use "particular phrases or formulations" in making a credibility determination). Also, as the Commissioner notes, even the Seventh Circuit has found the use of boilerplate language harmless when "the ALJ has otherwise explained his conclusion adequately." Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012).

expresses no views as to the ultimate outcome. On remand, each side shall be afforded an opportunity to introduce additional evidence. The purposes of the Social Security Act will best be served by further consideration of Plaintiff's claims upon a more fully developed record. See generally Epps v. Harris, 624 F.2d 1267, 1275 (5th Cir. 1980).

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) The decision of the Commissioner be **REVERSED** and the case be **REMANDED** for further proceedings consistent with the forgoing; and

(2) The Clerk of Court shall enter final judgment in favor of Plaintiff pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand" and close the file. Shalala v. Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993). The final judgment shall state that if Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for attorney's fees under 42 U.S.C. § 406(b) must be filed no later than thirty (30) days after the date of the Social Security letter sent to the plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney fees. See In re Procedures for Applying for Attorney Fees under 42 U.S.C. §§ 406(b) and 1383(d)(2), No. 6:12-mc-124-CRL-22 (M.D. Fla. Nov. 13, 2012).

**Date: June 26, 2013**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge